A02A0459. EDWARDS v. THE STATE.
(559 SE2d 506)

PHIPPS, Judge.

Ronald Lee Edwards appeals his conviction of one count of child molestation,[1] alleging that the trial court erred by (1) allowing the jury to review a transcript of an interview with the victim without giving an adequate cautionary instruction; (2) improperly restricting cross-examination of a State's witness; (3) allowing an anatomically correct drawing to go out with the jury; (4) giving an overly broad jury charge on child molestation; and (5) allowing a State's witness to bolster the testimony of the child victim. Because each of these claims lacks merit, we affirm.

The evidence showed that during the fall of 1998, Edwards babysat seven-year-old B. T. when she got home from school. Sometime in 2000, B. T. saw a program at school about personal safety that included information about inappropriate touching. After the program, B. T. went to see school counselor Elizabeth Guthrie, who described her demeanor during their meeting as "extremely emotional." B. T. told Guthrie that a man she had stayed with after school had touched her inside her clothing.

B. T. was later interviewed by Teresa Pilcher of the Bartow County Sheriff's Department and Glenda Holt of the Department of Family & Children Services. The interview was recorded on videotape and audiotape, and the audiotape was played for the jury. In the interview, B. T. told Pilcher and Holt that Edwards had repeatedly

---

[1] Edwards also was charged with an unrelated count of aggravated child molestation in connection with a second victim, but he was acquitted of that charge.

placed his hand inside her pants on her vagina. Holt gave B. T. an anatomically correct drawing of a girl and asked her to circle the places where Edwards had touched her. B. T. circled the girl's vaginal and buttocks areas.

1. The jury was given a transcript, apparently prepared by the State, of the audiotaped interview of B. T. Before the jury received the transcript, the trial court issued the following instruction:

> Ladies and gentlemen of the jury, I anticipate that Ms. Fox [the prosecutor] and Ms. Holt will play a cassette tape in just a moment, and there is a transcript of that tape that Ms. Fox will distribute to you and you may use that to follow along with the tape, if you want to. Now, you don't have to. And let me say this; you know, to some extent, this transcript represents somebody's interpretation of what's on the tape. If you find there's any conflict, then you use your own judgement [sic] about what was said. In other words, if you find any conflicts between the transcript and the tape itself, you are not bound to accept what's on this transcript. You use your discretion to determine what's on the tape. And the tape itself should be considered the highest and best evidence. And even though you have this transcript, I urge you to listen carefully to the tape. And I would also urge you don't read ahead, just, you know, read along with it if you utilize it.

Edwards contends that giving the transcript to the jury was error because the court's instruction was inadequate to prevent the jury from giving it undue weight.

Our Supreme Court has held that it is not error to allow jurors to use a transcript as a tool to assist them in listening to an audiotape if (1) a proper foundation is laid for admission of the tape and (2) proper cautionary instructions are given.[2] Edwards concedes that the first requirement was satisfied, but he claims the court's cautionary instruction was flawed because it did not include the admonition that the transcript itself was not evidence. Although such language was included in the cautionary instructions approved by the Supreme Court,[3] we do not agree that an instruction is automatically deficient without it. In *Slakman v. State*,[4] the Supreme Court listed a number of important safeguards to be included in a cautionary instruction,

---

[2] *Washington v. State*, 268 Ga. 598, 600 (3) (492 SE2d 197) (1997); *Guess v. State*, 264 Ga. 335, 336 (2) (443 SE2d 477) (1994).

[3] See *Washington*, supra; *Guess*, supra.

[4] 272 Ga. 662 (533 SE2d 383) (2000).

only one of which was a statement that the transcript was not evidence.[5]

The purpose of the cautionary instruction is to ensure that the jury recognizes that the audiotape itself is more important than the transcript. The instruction here accomplished that purpose. The court told the jury that use of the transcript was optional, that the transcript was one person's interpretation of the tape, that the jury had to decide the contents of the tape, and that any conflicts between the tape and the transcript should be resolved in favor of the tape. We approved similar language in *Nobles v. State*,[6] even though the instruction in that case, as here, did not include the explicit statement that the transcript was not evidence.[7] Moreover, the transcripts were collected immediately after the tape was played, and they did not go out with the jury. Finally, as the State points out, Edwards does not point to any alleged discrepancies between the transcript and the audiotape, and all participants in the interview testified at trial and were available at trial for cross-examination as to what they had said. We find no error.

2. Edwards asserts that the trial court erred in curtailing his cross-examination of Holt concerning the videotape of her interview with B. T.

Holt testified on direct examination that the interview had been both video- and audiotaped. In a discussion at the bench, the prosecutor told the court that she would play the audiotape for the jury because the videotape contained an inadmissible reference by B. T. to Edwards's incarceration on another matter and could be blocked out on the audiotape but not on the videotape. During cross-examination of Holt, Edwards's attorney asked a number of questions about whether the interview had been videotaped and then asked whether there was "some problem with that videotape." The court called counsel to the bench and told Edwards's attorney that "you know what the problem with the videotape is. You keep on and I'm going to let them play it." Edwards's attorney later explained that he wanted the State to play the videotape (with the reference to Edwards's incarceration deleted) instead of the audiotape because B. T. had said "uh-huh" several times on the audiotape in response to questions about what Edwards had done to her and the attorney thought the jury might incorrectly interpret those "uh-huhs" as affirmative responses.

---

[5] Id. at 666 (2).

[6] 233 Ga. App. 63, 64-65 (4) (503 SE2d 321) (1998).

[7] See also *Gaston v. State*, 180 Ga. App. 470-471 (2) (349 SE2d 526) (1986) (no error where court told jury that transcript was to be used as listening aid, its admission into evidence implied nothing about its accuracy, and jury should determine and evaluate contents of tape).

"Control of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."[8] We find no abuse of discretion in the court's limitation of Edwards's attempt to cast suspicion on the State's refusal to play the videotape when that refusal was intended to protect Edwards from a prejudicial reference to his incarceration. As for Edwards's concern that the audiotape and transcript were unclear, he could have clarified any confusion during cross-examination of the interview's participants.

3. Edwards claims the trial court erred by allowing the anatomically correct drawings on which B. T. indicated where Edwards had touched her to go out with the jury. We have held that it is not error to allow such drawings to go out with the jury because they have no testimonial value in themselves but are merely tools to explain testimony given at trial.[9] Edwards cites *Bryant v. State*,[10] in which we applied this rule and noted that the drawings in question "were seen on the videotape of the victim's interview."[11] Edwards claims that because the videotape of the interview was not played in this case, the anatomical drawing rule does not apply. But we find no basis for restricting the rule to cases in which a videotape was played. In this case, an audiotape of the interview was played, during which the drawings were mentioned. The drawings were simply used to illustrate B. T.'s audiotaped testimony.

4. Edwards complains that the trial court erroneously instructed the jury on the entire statutory definition of child molestation[12] even though the indictment charged him with committing the crime in a specific manner — by placing his hand against B. T.'s vaginal area. Edwards claims the jury might have found him guilty of some form of child molestation not charged in the indictment. We disagree.

It is not error to charge an entire Code section even though part of the section may be inapplicable unless there is a reasonable probability that the jury would convict the defendant of committing the offense in a manner not charged in the indictment.[13] We have held that the child molestation statute does not set forth alternative methods by which the crime may be committed, so no error arises

---

[8] (Footnote omitted.) *Latimore v. Dept. of Transp.*, 250 Ga. App. 360, 361 (1) (552 SE2d 439) (2001).

[9] *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998).

[10] 249 Ga. App. 383, 384-385 (3) (547 SE2d 721) (2001).

[11] Id. at 385 (3).

[12] The charge tracked the language of OCGA § 16-6-4 (a), which provides that "[a] person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."

[13] *Buice v. State*, 239 Ga. App. 52, 59 (5) (520 SE2d 258) (1999).

from reading the entire definition.[14] In any event, the court read the indictment to the jury and told the jury to return a guilty verdict as to the child molestation count "[i]f you find and believe beyond a reasonable doubt that he is guilty of that offense *as alleged in the indictment.*" (Emphasis supplied.)[15] Thus, there was no error.

5. Finally, Edwards asserts that school counselor Guthrie improperly bolstered B. T.'s credibility.

On cross-examination, Edwards's attorney asked Guthrie whether she had approached B. T. from an "objective perspective, . . . let's ascertain whether [B. T.] is telling the truth or a lie" or from a "subjective approach" in which she tried to counsel B. T. but did not "browbeat her as to whether or not she's telling the truth." Guthrie responded that she took the latter approach with B. T., but that

> every child is different. You know, there's some kids that are professional manipulators and I think — you know, I think you have to deal with every child differently, but I think when you see a child in a situation where their emotion is that genuine and that significant and they don't have anything in their history or whatever as a student that says I'm the type of student that seeks attention and I'll do anything —.

At that point, Edwards's attorney interrupted and complained that Guthrie was bolstering B. T.'s credibility. The court told the attorney to move on to his next question, which he did without further objection.

(a) Edwards argues that the court should have sua sponte declared a mistrial or instructed the jury to disregard Guthrie's statement, even though his attorney made no such request. We disagree.

First, a defendant may not complain of error that he induced.[16] Guthrie's statement was responsive to a question Edwards's attorney asked during cross-examination. Accordingly, Edwards cannot claim error.[17]

Second, a defendant may not complain of a trial court's failure to

---

[14] Id.; *Abreu v. State*, 206 Ga. App. 361, 362 (1) (425 SE2d 331) (1992).

[15] See *Fuller v. State*, 211 Ga. App. 104, 105 (4) (438 SE2d 183) (1993) (not error to charge entire statutory definition of child molestation where court also told jury that defendant was on trial for particular offense charged in indictment).

[16] *Bakery Svcs. v. Thornton Chevrolet*, 224 Ga. App. 31, 32 (1) (479 SE2d 363) (1996).

[17] See *Kapsch v. Stowers*, 209 Ga. App. 767, 770 (4) (b) (434 SE2d 539) (1993); *Jackson v. State*, 154 Ga. App. 411, 412 (1) (268 SE2d 749) (1980).

grant relief that was not requested.[18] There is an exception to this rule in the case of plain error which is likely to result in a grave miscarriage of justice.[19] This, however, is not a case of plain error. Guthrie never said that she believed B. T. or that B. T. was not likely to lie. Rather, she spoke in abstract terms about her general approach in interviewing children. Even if Guthrie's comment can be construed as indirectly bolstering B. T.'s credibility, it was not so prejudicial that the trial court's failure to order a mistrial or issue a curative instruction constituted plain error.[20]

(b) Alternatively, Edwards argues that his attorney was ineffective for failing to seek a mistrial or curative instruction after Guthrie's statement. Claims of ineffective assistance of counsel must be raised at the earliest possible opportunity.[21] Edwards has waived this claim because his trial attorney, who also represents him in this appeal, did not raise it below in a motion for new trial.[22]

Even if we could consider this claim, it lacks merit. To prevail on a claim of ineffective assistance of counsel, a defendant must show a reasonable probability that, but for his attorney's deficient performance, the outcome of the trial would have been different.[23] As noted above, Guthrie's statements were not so egregious that there is a reasonable probability that, had she not made them, Edwards would have been acquitted.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 25, 2002.

*Joshua D. Earwood*, for appellant.
*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.

---

[18] *Milton v. State*, 232 Ga. App. 672, 676 (3) (503 SE2d 566) (1998).
[19] *Buice*, supra at 56 (2).
[20] See *Roberson v. State*, 241 Ga. App. 226, 229 (1) (526 SE2d 428) (1999) (physical precedent only) (no harmful error where witness's comments at most "only implied or suggested that the victim would be truthful with respect to her allegations" against defendant).
[21] *Seese v. State*, 235 Ga. App. 181, 183 (3) (509 SE2d 94) (1998).
[22] See *Florence v. State*, 246 Ga. App. 479, 481 (8) (539 SE2d 901) (2000). The record contains no motion for new trial or ruling thereon.
[23] *Morrison v. State*, 251 Ga. App. 161, 163 (2) (554 SE2d 190) (2001).